United States District Court
Eastern District of New York
-------------------------------------X

MARIA ELENA PARRA,                            **MEMORANDUM & ORDER**

              Plaintiff,                 14-CV-3157 (KAM)

   -against-                                 Not for Publication

CAROLYN W. COLVIN,

Acting Commissioner of Social Security,

              Defendant.

-------------------------------------X

**MATSUMOTO, United States District Judge:**

Pursuant to 42 U.S.C. §§ 1395w-114(3)(B)(iv) and 405(g), plaintiff Maria Elena Parra ("plaintiff"), proceeding *pro se*, appeals the final decision of defendant Carolyn W. Colvin, Commissioner of Social Security ("defendant" or the "Commissioner") (ECF No. 1, Compl., dated 5/12/2014), denying plaintiff's Application for Help with Medicare Prescription Drug Plan Costs ("Medicare Part D" or "Extra Help") under Title XVIII of the Social Security Act (the "Act"). *See* 42 U.S.C. § 1395w-114(a)(3).

Presently before the court is defendant's motion for judgment on the pleadings, filed on October 10, 2014. (*See* ECF No. 16, Defendant's Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Def. Mem.") dated 10/10/2014). Plaintiff's opposition was filed on October 29, 2014. (*See* ECF

No. 14, Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl. Opp.") dated 10/29/2014). Plaintiff contends that she is eligible for Medicare Part D because her monthly Medicare premium deduction reduces her annual income from Social Security disability benefits ("SSD") to below one-hundred fifty percent ("150%") of the federal poverty line. (*Id.*) Plaintiff also alleges that she has been denied Medicare since 2002 and seeks retroactive SSD benefits from 1991 until 1992. (*Id.*) Defendant filed a reply to plaintiff's opposition on November 25, 2014. (*See* ECF No. 17, Defendant's Reply Memorandum of Law in Further Support of Motion for Judgment on the Pleadings ("Def. Reply") dated 11/25/2014). For the reasons set forth below, defendant's motion is granted and the Commissioner's decision affirmed.

## BACKGROUND

I. **Facts Unrelated to Eligibility for Medicare Part D**

Plaintiff was born on March 4, 1964. (*See* Pl. Opp. at 11.) Plaintiff currently resides in Long Island City, New York. (*See* Tr. 17.)[1] In January 2000, plaintiff filed an appeal of disability benefits with the Social Security Administration ("SSA") for the years between 1992 and 1995. (*See* Pl. Opp. at 5.) On August 30, 2003, the SSA found that plaintiff was eligible for disability benefits, and determined that

---
[1] Citations to the administrative record (1-38) are indicated by the abbreviation "Tr."

2

plaintiff's disability began on February 9, 1993. (*See id.* at 6.) Disability benefit payments begin no earlier than one year before the month in which a claim was filed and, therefore, plaintiff was entitled to benefits starting in April 1994, one year before she filed a claim on April 5, 1995. *See* 20 C.F.R. § 404.621(a)(1).

## II. Eligibility for Medicare Part D

### A. Plaintiff's December 2, 2013 Application

In a letter dated November 22, 2013, the SSA requested more information from plaintiff about her income and resources to determine her eligibility for Medicare Part D. (Tr. 1.) On December 2, 2013, plaintiff filed an application for Medicare Part D with SSA. (Tr. 3-4.) In her application, plaintiff stated that she did not have "savings, investments and real estate (other than [her] home) worth more than $13,300.00." (*Id.*) Plaintiff stated that she had a total of $1,550.00 in bank accounts, $600.00 in investments, and $80.00 in cash. (*Id.*) She expected to earn $700.00 in the upcoming year. (*Id.*) Plaintiff also stated that she did not own life insurance worth more than $1,500, nor have money set aside for burial expenses, but owned real estate. (*Id.*)

In a Pre-Decisional Notice dated December 7, 2013, the SSA informed plaintiff that she was not eligible for Medicare Part D because her income and resources were above the legal

3

limit. (Tr. 5-6.) The Pre-Decisional Notice Stated that the income limit for a one-person household is $17,235.00, which is 150% of the federal poverty level. (Tr. 8.) Plaintiff earned $18,600.00 a year in Social Security benefits. (*Id.*) After applying the general income exclusion ($240) and earned income exclusion ($780), plaintiff's total income was $18,360.00, an amount above the legal limit. (Tr. 8.) The SSA also found that plaintiff's resources exceeded the legal limit for Medicare Part D eligibility. (Tr. 5, 9.) The SSA calculated that plaintiff's cash ($80.00), bank accounts ($1,550.00), investments ($600.00), and real property ($48,000.00) totaled $50,230.00, which was $38,290.00 more than the $11,940.00 legal limit. (Tr. 9.)

On January 4, 2014, the SSA issued a Notice of Denial, which found that plaintiff was not eligible for Medicare Part D because both her income and resources were above the legal limit. (Tr. 10-15.) The SSA did not consider her real estate in making its decision because plaintiff's income was over the legal limit. (Tr. 11.)

### B. Plaintiff's January 31, 2014 Application

On January 31, 2014, plaintiff filed another application for Medicare Part D. (Tr. 16.) Plaintiff stated that she had "savings, investments and real estate (other than [her] home) worth more than $13,440.00." (*Id.*) Plaintiff stated that she had a total of $20.00 in bank accounts, $0.00 in

4

investments, and $1,000.00 in cash.  (*Id.*)  Plaintiff stated that she did not expect to earn income in the upcoming year. (*Id.*)  Plaintiff also stated that she did not have money set aside for burial expenses, but she owned real estate.  (*Id.*)

On February 5, 2014, SSA issued a Pre-Decisional Notice providing that plaintiff would not be eligible for Medicare Part D because her income and resources were above the legal limit.  (Tr. 18-21.)  The income limit for a one-person household was $17,505.00 at the time.  (Tr. 21.)  Plaintiff earned $18,876.00 a year in Social Security benefits.  (*Id.*) After applying the general income exclusion ($240), plaintiff's total income was $18,636.00, an amount above the legal limit. (*Id.*)  Plaintiff also had resources worth more than $13,440.00, an amount above the legal limit.  (Tr. 18.)

On March 3, 2014, the SSA issued a Notice of Denial, which found that plaintiff's income and resources were above the legal limit for Medicare Part D.  (Tr. 22-26.)  On March 5, 2014, plaintiff appealed the SSA's decision and requested a hearing.  (Tr. 27-28, 33).  The SSA acknowledged plaintiff's appeal and request for a hearing by letter, dated March 7, 2014. (Tr. 27-28.)

**C. March 27, 2014 Medicare Part D Hearing**

Prior to plaintiff's Medicare Part D hearing scheduled for March 27, 2014, plaintiff filed an additional application for Medicare Part D. (Tr. 32.) The SSA cancelled plaintiff's March 27, 2014 application because plaintiff's January 31, 2014 application was still pending on appeal. (*See* Def. Mem. at 2 n.2.) The SSA's Subsidy Determination Reviewer ("SDR"), however, considered the "pertinent information" in plaintiff's March 27, 2014 application during her case review. (*See* Tr. 37.)[2]

On March 27, 2014, plaintiff waived the hearing and the SDR conducted a case review. (Tr. 38.) The SDR issued a Notice of Appeal Decision the same day, denying plaintiff's application for Medicare Part D because her income and resources were above the legal limit. (Tr. 33-36.) The SDR also found that plaintiff no longer automatically qualified for Extra Help. (Tr. 34.) Plaintiff's real estate, valued at $50,000.00, exceeded the $13,440.00 legal limit for a single-family house. (*Id.*) Plaintiff's income, totaling $18,636.00 after deducting the general income exclusion ($240), exceeded the $17,505.00

---

[2] Plaintiff's March 27, 2014 Medicare Part D application stated that she had "savings, investments and real estate (other than [her] home) worth more than $13,440.00." (*Id.*) Plaintiff also stated that she had $20.00 in bank accounts, $0.00 in investments, and $30.00 in cash. (*Id.*) She affirmed that she did not own a life insurance policy worth more than $1,500, nor have money set aside for burial expenses, but owned real estate. (*Id.*) Plaintiff also expected to earn no income in the upcoming year. (*Id.*)

6

legal limit for a single-person household.  (*Id.*)  The SDR's Notice of Decision informed plaintiff of her right to appeal and explained how she could challenge the SSA determination.  (Tr. 34-35.)

## DISCUSSION

**I.  Standard of Review**

In reviewing a decision of the Commissioner, this court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court assesses the Commissioner's decisions to determine: (1) whether the proper legal standards for Medicare Part D eligibility were applied, and (2) whether substantial evidence supports the findings of fact.  *See id.;* 42 U.S.C. § 1395w-114(a)(3)(B)(iv).  The decision must stand if the Commissioner's decision applies the correct legal standards and is supported by substantial evidence.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  Substantial evidence is "more than a mere scintilla [of evidence]," and is "such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion." *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The

Commissioner's findings, as to any fact supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Where, as here, a litigant is *pro se*, the court construes the submissions "liberally" and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

**II. Legal Standard Governing Agency Determination of Eligibility for Medicare Part D**

An individual eligible for Medicare Part D must: (1) be eligible for a Medicare Part D subsidy; (2) be enrolled in a prescription drug plan or Medicare Advantage Prescription Drug plan; (3) have income below 150 percent of the poverty line applicable to a family of the size involved; and (4) meet certain resource requirements. 42 U.S.C. §§ 1395w-101(a)(3)(A), 1395w-114(a)(3).

The Center for Medicare and Medicaid Services ("CMS") is duty-bound to ensure low-income subsidy eligible individuals enroll in Medicare Part D. 42 C.F.R. § 423.34(a); *see also* Program Operations Manual System ("POMS") HI 03010.005C, https://secure.ssa.gov/apps10/poms.nsf/lnx/0603010005. In some cases, CMS automatically deems certain individuals eligible, obviating the need to file a subsidy application, when an individual is full-benefit dual eligible (i.e., Medicaid and Medicare eligible), enrolled in a Medicare Savings Program, or

receives Supplemental Security Income ("SSI") and has Medicare. 20 C.F.R. § 418.3105; 42 C.F.R. § 423.773(c). Individuals not automatically deemed eligible may file a Medicare Part D application with SSA. 20 C.F.R. § 418.3110(a). The Commissioner then determines whether the applicant meets the eligibility standards. *See id.*; 20 C.F.R. § 418.3101.

### A. Medicare Part D Income Eligibility

As noted above, an individual eligible for Medicare Part D must have an income below 150% of the federal poverty level applicable to family size. 42 U.S.C. § 1395w-114(a)(3)(A)(ii); 42 C.F.R. § 423.773(a)(1). In 2014, annual income amounting to 150% of the federal poverty level for a family of one was $17,505.00. *See* POMS HI 03001.020(C)(4); *see also* 20 C.F.R. § 418.3101. In calculating income, the SSA considers an individual's gross income, both earned and unearned. 20 C.F.R. §§ 418.3315, 418.3335, 416.1121. Social Security benefits and Medicare premiums factor into the SSA's income calculations. 20 C.F.R. § 418.3340(c).

### B. Medicare Part D Resource Eligibility

An individual eligible for Medicare Part D must also meet certain resource requirements. 42 U.S.C. § 1395w-114(a)(3)(A)(ii). In 2014, the resource limits for subsidy eligibility was $11,940. *See* POMS HI 03030.025(C)(1); *see also* 42 C.F.R. § 423.773(b)(2) (excluding $1,500 for expected funeral

9

expenses). The SSA considers both liquid resources and real property resources to determine resource eligibility, but excludes an individual's principal residence. 20 C.F.R. § 418.3405. Liquid resources are cash, financial accounts, stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, financial institution accounts, retirement accounts, revocable trusts, and similar items. *Id*. In addition to an individual's principal residence, resources excluded from consideration include burial expenses, property essential to the means of self-support, life insurance, and housing assistance, among other items. 20 C.F.R. § 418.3425

## **APPLICATION**

**I. Plaintiff's Eligibility for Medicare Part D**

Although CMS deemed plaintiff eligible for Medicare Part D in 2012 and 2013, she no longer automatically qualified for assistance in 2014. (Tr. 33-34.) As a result, plaintiff filed an application for Medicare Part D on January 31, 2014 with the SSA. (Tr. 34.) In rendering an eligibility determination, the Commissioner appropriately reviewed plaintiff's income and resources in accordance with the SSA guidelines. *See* 20 C.F.R. § 418.3101(d)-(e).

**A. Plaintiff's Income Eligibility for Medicare Part D**

To qualify for Medicare Part D in 2014, plaintiff's income must fall below $17,505.00, 150% of the federal poverty

level for a family size of one-person. *See* POMS HI 03001.020(C)(4); *see also* 20 C.F.R. § 418.3101. Plaintiff's income, however, exceeded the legal limit. In 2014, plaintiff received $18,876.00 in Social Security benefits. After applying the general income exclusion of $20 a month ($240 a year), plaintiff's income still exceeded the legal limit at $18,636.00.

In her opposition, plaintiff claims that the monthly $104.90 Medicare premium ($1,258.80 a year) deducted from her SSD benefits affects her eligibility. (*See* Pl. Opp. at 1.) Medicare premiums, however, are not subtracted from an applicant's annual income when rendering a Medicare Part D eligibility determination. 20 C.F.R. § 418.3340(c)(2). In any event, even if the SSA subtracted plaintiff's Medicare premium from her annual income, she would still receive $17,616.00 a year in benefits, an amount above the $17,505.00 legal limit. *See* POMS HI 03001.020(C)(4).[3]

**B. Plaintiff's Resource Eligibility for Medicare Part D**

In addition to income eligibility, Medicare Part D applicants must also have resources below the legal limit to be eligible for the subsidy. In 2014, the resource limit for Medicare Part D eligibility was $11,940 for a family size of one

---

[3] According to Raymond Egan's Affidavit, New York State paid plaintiff's Medicare Part B premiums from October 1998 to April 2014. (ECF No. 17-1, Declaration of Raymond Egan ("Egan Decl.") ¶ 3.) New York State, therefore, had paid plaintiff's Medicare premiums up through the March 27, 2014 SSA hearing.

11

person. *See* POMS HI 03030.025(C)(1); *see also* 42 C.F.R. § 423.773(b)(2). Although the SSA did not consider plaintiff's resources in her January 31, 2014 application, plaintiff's application affirmed that she had resources above the legal limit, which the Commissioner took into account on appeal. (Tr. 22-26, 34.) On March 27, 2014, the Commissioner found that plaintiff owned "other real estate valued at $50,000.00," which exceeded the legal limit for resource eligibility. (Tr. 34.)

In calculating plaintiff's resources, the Commissioner relied on information plaintiff provided in her December 2, 2013 Medicare Part D application. (Tr. 9.) (valuing plaintiff's real property at $48,000.00). Pursuant to federal regulations, the Commissioner should exclude plaintiff's principal residence from the assessment of resource eligibility. *See* 20 C.F.R. § 418.3405. The record does not substantially support the Commissioner's specific finding that plaintiff possessed "other real estate" valued at "$50,000.00." (Tr. 34.) First, the SSA valued plaintiff's real property at $48,000.00, not $50,0000.00, and the record does not contain any other evidence indicating that the real estate was valued at $50,000.00 or that plaintiff even owns other real estate valued at $50,000.00. (Tr. 9, 34.) Additionally, the record is not adequately developed as to whether the real property in question constituted plaintiff's principal residence.

Nevertheless, plaintiff stated in her January 31, 2014 and March 27, 2014 applications that she had "savings, investments and real estate (other than [her] home) worth more than $13,440.00." (Tr. 16, 32.) Plaintiff also had additional resources in bank accounts and cash. (*Id.*) Thus, the Commissioner's finding that plaintiff did not meet the resource requirement is supported by substantial evidence.

## II. Retroactive Benefits for 1991 and 1992

Plaintiff seeks retroactive SSD benefits from 1990 to 1992. (*See* Compl. at 1.) Judge David Trager of the United States District Court for the Eastern District of New York, however, considered and dismissed plaintiff's request for retroactive benefits in 2002. *See Parra v. Halter*, 01-CV-4281 (E.D.N.Y. Sept. 20, 2002). Plaintiff is barred from asking the court to decide the matter again pursuant to the doctrine of *res judicata*. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 (2d Cir. 2003) ("Under the doctrine of *res judicata*, or claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (internal quotations and citations omitted).

To the extent plaintiff seeks Medicare Part B benefits for the first time in her opposition, the court dismisses the claim as moot. (Pl. Opp. at 1.) ("[M]edicare Part B is needed for all

my medical at hospital visits Elmhurst, NY."). Plaintiff has been entitled to Medicare Part B since May 1998. (Egan Decl. ¶ 2.)

## **CONCLUSION**

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted. The Clerk of the Court is respectfully ordered to enter judgment in favor of defendant; mail a copy of the judgment, this Memorandum and Order, and an appeals packet to plaintiff; note service of the foregoing documents on the docket no later than February 26, 2016; and to close this case.

**SO ORDERED.**

Dated:   February 25, 2016
         Brooklyn, New York

                                    _____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge